UNITED STATES of America, Plaintiff–Appellee,

v.

Keith PICKETT, Defendant–Appellant.

No. 90–3594.

United States Court of Appeals, Sixth Circuit.

Argued March 15, 1991.

Decided Aug. 1, 1991.

---

Ronald B. Bakeman (argued), Asst. U.S. Atty., Office of U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Gerald S. Gold (argued), John S. Pyle, Gold, Rotatori, Schwartz & Gibbons, Cleveland, Ohio, for defendant-appellant.

Before KRUPANSKY and BOGGS, Circuit Judges, and WOODS, District Judge.[*]

BOGGS, Circuit Judge.

Keith Pickett appeals from his conviction and sentence for conspiracy to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1). For the following reasons, we affirm his conviction and sentence.

## I

In early July 1989, Pickett was arrested, along with other conspirators, by police from Cleveland, Ohio. He was subsequently charged in Ohio state court with violating Ohio Revised Code § 2925.03, trafficking in controlled substances, and was freed shortly thereafter from the Cuyahoga County jail on a $60,000 bond. Pickett was indicted on federal charges on September 21, 1989. It was subsequently necessary to issue a federal arrest warrant. Pickett was arrested on the federal charges on January 3, 1990, and pled guilty in accordance with Rule 11(e), Fed.R.Crim.P., on April 3. This plea was tendered as part of a plea bargain in which two other counts in the indictment would be dropped and Pickett would receive a 240–month sentence. This sentence was within the 235 to 293 month range prescribed by the Guidelines for his offense, taking the amount of crack involved into account in establishing the Offense Level. The court accepted the guilty plea and bound Pickett over for sentencing.

At Pickett's sentencing hearing, he argued that the Sentencing Guidelines rule that illegal possession of 1 gram of crack is the equivalent for sentencing to 100 grams of cocaine powder ("cocaine") is unconstitutional. A chemist, Donald Nittskoff, testified that cocaine and crack affect the human nervous system in similar ways. Nittskoff testified that the chemical and psychological effect of both crack and cocaine was dependent upon the purity of the drug, not the form in which they were ingested. He testified that inhaled cocaine smoke (the method of ingesting crack) would reach the brain in ten seconds, while snorted cocaine through the nose took a minute to reach the brain, and that the chemical effect wore off more quickly for inhaled cocaine smoke. However, he testified that this difference did not produce a major difference in addiction or psychological dependency. He testified that the concentration and amount of the drug ingested had much more to do with addiction and psychological dependency. On cross-examination, Nittskoff agreed with the government that other chemists had different theories regarding the different effects of cocaine and crack. Those theories hold that crack smoke reaches the brain with a speed that creates a stronger psychological demand to repeat drug use than does snorted cocaine. The government quoted from a book by Dr. Richard Seferstein, who wrote that "[t]he desire to return to euphoric feeling is so intense that crack users quick-

[*] The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

ly develop a habit for the drug that is almost impossible to overcome."

The district court rejected defendant's constitutional objection to the 100:1 ratio. Pickett's timely appeal followed.

## II

### A

We must first address some jurisdictional questions. Pickett raises five issues on appeal, three of them regarding his sentence and two regarding his conviction.[1] The government contends that we are without jurisdiction to hear any of them because 18 U.S.C. § 3742 prevents our hearing Pickett's appeal of his sentence, Pickett did not raise his arguments before the district court, and did not reserve his right to review adverse determinations of certain pre-trial motions, as required by Rule 11(a)(2), Fed.R.Crim.P. We hold that only the Rule 11(a)(2) argument has any merit, and that it only prevents us from reaching the merits of Pickett's appeal from his conviction.

### B

■ We turn first to the government's § 3742 argument. Pickett's notice of appeal was filed pursuant to Rule 3, Fed. R.App.P.,[2] which governs the filing of notices of appeal for appeals permitted by law as of right. Pickett's notice stated that he was appealing from the district court's final judgment and sentence promulgated on June 26, 1990. Appeals from criminal sentences are taken as of right pursuant to 18 U.S.C. § 3742. 18 U.S.C. § 3742(c)(1) provides that a plea agreement that includes a specific sentence in accord with Rule 11(e)(1)(C), Fed.R.Crim.P., may not be appealed by a defendant "under

paragraph (3) or (4) of subsection (a) unless the sentence imposed is greater than the sentence set forth in such agreement." As Pickett received the 240-month sentence that he agreed to, the government contends that he may not appeal from that sentence.

This contention is wholly without merit. Section 3742(c) refers to prerequisites to filings of appeal contained in § 3742(a). 18 U.S.C. § 3742(a) reads as follows:

A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

Clearly none of Pickett's three challenges fall under paragraphs (3) or (4) of subsection (a). Two of Pickett's challenges regard the constitutionality of the 100:1 ratio used by the Guidelines to sentence illegal possession of crack. These issues clearly constitute an appeal under paragraph (1), a sentence imposed in violation of law. § 3742(c) does not bar challenges under paragraph (1) of subsection (a). *United States v. Newsome*, 894 F.2d 852 (6th Cir. 1990). The other argument that the Sentencing Guidelines were misapplied is clear-

---

**1.** Pickett does not characterize these arguments as constituting an appeal from his conviction. Rather, he states that he only seeks remand of his case to the district court for an evidentiary hearing to determine whether his due process and Speedy Trial Act rights were violated. However, Pickett claims that these rights were violated by his being charged with federal offenses after he had already been charged with state offenses pertaining to the same conduct. The proper remedy for such violations of these

rights would not be a reduction in sentence; it would be the reversal of his conviction because the very process of charging him with the offense in which he pled guilty would violate his rights. Therefore, we can only read these issues as constituting an appeal from his conviction.

**2.** Fed.R.App.P. 3(c) commands that notices "shall designate the judgment, order, or part thereof appealed from."

ly an issue arising under paragraph (2), and hence is also not barred by § 3742(c). *United States v. Smith*, 918 F.2d 664, 669 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1088, 112 L.Ed.2d 1192 (1991) (appeal from a specific 120–month sentence permitted under § 3742(a)(1) or (a)(2)). We therefore are permitted to reach the merits of Pickett's appeal from his sentence.

### C

 The government's jurisdictional objections to Pickett's appeal of his conviction are a different matter. The government first contends that we cannot hear Pickett's arguments in support of his appeal of his conviction because they were not raised before the district court. The government notes that our practice is not to consider an issue on appeal that was not raised by the appellant before the district court. The government asks without elaboration that we follow this practice here.

The government's position does not fully represent our practice. We have refused to follow this practice in " 'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice.' " *Pinney Dock and Transport Co. v. Penn Central Corp.,* 838 F.2d 1445, 1461 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), *quoting Hormel v. Helvering,* 312 U.S. 552, 557, 558, 61 S.Ct. 719, 721, 722, 85 L.Ed. 1037 (1941). *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). We have held that we possess dis-

cretion to determine whether a case fits within any of the narrow exceptions to the general rule. *Pinney Dock,* 838 F.2d at 1461. There is thus no *jurisdictional* bar to our reaching the merits of Pickett's appeal if we find the facts of this case fit within one of the narrow exceptions.

We find that Pickett's appeal fits into one of those exceptions. We held in *Pinney Dock* that we will address issues not raised below "to the extent the issue is presented with sufficient clarity and completeness." *Pinney Dock,* 838 F.2d at 1461. Both parties have extensively briefed the issues at stake, and as the issues are wholly legal we see no advantage to remanding this case to the district court for further factfinding before passing judgment.[3]

 The government also contends, without elaboration, that our review is precluded by Rule 11(a)(2), Fed.R.Crim.P.. This rule permits a defendant to enter a conditional plea of guilty or nolo contendere while reserving the right "on appeal from the judgment, to review of the adverse determination of any specified pretrial motion."

An examination of the purpose behind this rule persuades us that it prevents our hearing Pickett's appeal from his conviction. The rule was added as part of amendments to Rule 11 adopted in 1983. The Notes of the Advisory Committee on Rules state that these amendments were intended to permit a "defendant who has

---

**3.** We also take note of another potential jurisdictional objection to our hearing Pickett's appeal of his conviction. *United States v. Cristoph,* 904 F.2d 1036 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). It could be said that Pickett's notice of appeal limits the scope of the appeal to the sentence only. Pickett's notice of appeal reads in pertinent part as follows:

> Defendant Keith Pickett ... [appeals] from the final judgment entered in the U.S. District Court for the Northern District of Ohio on June 26, 1989, wherein the defendant was sentenced to serve a term of 240 months in the custody of the Bureau of Prisons.
> This appeal is based on the trial court's application of Federal Sentencing Guidelines.

As the final judgment contains the record of both Pickett's conviction and his sentence, this

notice can be read as either appealing from both the conviction and the sentence or merely from the sentence. An appellant waives any appeal to a portion of a judgment not mentioned in his notice of appeal if he chooses to "designate specific determinations in his notice." *McLaurin v. Fischer,* 768 F.2d 98, 102 (6th Cir.1985).

We find that Pickett's notice did not make such specific determinations as to limit his appeal from any aspect of the judgment. We also note that the government has not raised this question, has fully briefed Pickett's contentions, and has claimed no prejudice from any possible error in the notice. We have previously found those factors important in determining if we have jurisdiction over an ambiguously worded notice of appeal. *See Taylor v. United States,* 848 F.2d 715, 717–18 (6th Cir.1988).

lost one or more pre-trial motions" from going "through an entire trial simply to preserve the pretrial issues for later appellate review." Notes of the Advisory Committee on Rules for the 1983 Amendments to Rule 11(a), *reprinted in* 18 U.S.C.A.Rules 1–11 at 359. By permitting the entry of conditional pleas of guilty and nolo contendere, the rule was intended to reduce the "waste of prosecutorial and judicial resources" occasioned by the decision to bring cases to trial solely to appeal collateral issues, and to advance thereby the objectives of the Speedy Trial Act. *Ibid.*

The Rule does not clarify which motions qualify as "specified pretrial motions" under the Rule. There are two possible interpretations of this phrase: either only motions that by their own terms must be raised in pre-trial motions are within the ambit of Rule 11(a)(2), or only those motions specified in the plea itself as being preserved for review are covered by the rule. The first interpretation permits a defendant pleading guilty to raise subsequently collateral challenges to his conviction without notifying the court and the government when those challenges involve certain types of motions. The second interpretation places an affirmative duty on the defendant to preserve *all* potential collateral challenges through the preservation mechanism of Rule 11(a)(2).

We believe the second interpretation expresses the intent of the drafters of the rule. The first interpretation is supported by one sentence in the Notes that gives two specific examples of motions that by their own terms must be raised pre-trial or be forever waived: motions for dismissal of an indictment for violations of the Speedy Trial Act, 18 U.S.C. § 3162(a)(2),[4] and motions pursuant to Rule 12(b), Fed.R.Crim.P. 18 U.S.C.A.Rules 1–11 at 358. However, the Notes also seem to assume that the term "specified pretrial motions" incorporates all questions that are collateral to a determination of guilt or innocence. The Notes cite *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)

and *Lott v. United States*, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961), for the proposition that a defendant forecloses all subsequent non-jurisdictional appeals to his conviction by pleading guilty or nolo contendere. *Id.* at 358. This proposition is followed by almost all of the circuits. *See Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.1987) ("in the absence of a court-approved reservation of issues for appeal, [a defendant pleading guilty] waives all challenges to the prosecution except those going to the court's jurisdiction"). *See also United States v. Runnells*, No. 88–5555, 873 F.2d 1441 (unpublished disposition) (4th Cir. April 3, 1989); *United States v. Gaertner*, 583 F.2d 308 (7th Cir.1978), cert. denied, 440 U.S. 918, 99 S.Ct. 1238, 59 L.Ed.2d 469 (1979); *United States v. Brice*, 565 F.2d 336 (5th Cir.1977); *United States v. Leming*, 532 F.2d 647 (9th Cir.1975), cert. denied, 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 749 (1976). These cases do not distinguish between issues actually raised in pretrial motions and those which could have been raised via pretrial motions. They also do not distinguish between motions that by their own terms are required to be brought pre-trial and those that may be brought at any time. This incorporation of the general rule regarding waiver of all non-jurisdictional attacks on convictions subsequent to a guilty plea can only be squared with the rule itself if the second interpretation of the rule is correct.

We have previously, in an unpublished opinion, followed this reading of the Notes and found that a defendant waived his right to appeal from denial of his pretrial motion to suppress evidence when he did not make a conditional plea under Rule 11(a)(2). *United States v. Merritt*, No. 89–4094, 902 F.2d 35 (May 14, 1990).

██ We hold that Pickett's failure to enter a conditional guilty plea prevents him from raising his arguments against his conviction upon appeal. Pickett argues that his prosecution in federal court commenced

---

**4.** 18 U.S.C. § 3162(a)(2) states, in part, that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."

in violation of the Speedy Trial Act, and that his indictment for violation of federal drug laws subsequent to his state indictment for trafficking in drugs violates the Fourteenth Amendment's due process clause. Both arguments are barred by the operation of Rule 11(a)(2).[5] The Notes to the Rule make clear that it was not intended to eliminate the general rule that a guilty plea bars any subsequent non-jurisdictional attack on the conviction, even if the attack is a constitutional one. In fact, the Notes make clear that the Rule was necessary precisely to escape the operation of the general rule and avoid the expense of trial when all parties agree that the only dispositive issues remaining are those properly raised in pretrial motions. Accordingly, Pickett's contentions raised in his Supplemental Brief are not properly before us. We turn now to his appeal from his sentence.

### III

### A

Pickett makes three arguments in support of his contention that his sentence should be vacated. First, he argues that the district court failed to depart downward from the Guidelines when it was required to do so. Second, he argues that the 100:1 ratio violates the substantive component of the due process clause. Third, he argues that the 100:1 ratio violates the Cruel and Unusual Punishments clause of the eighth amendment. For the following reasons, we reject all of his arguments.

### B

We first address Pickett's statutory argument. He contends that the statute that requires district courts to apply the Guidelines, 18 U.S.C. § 3553(b), *requires* the district court to depart downward from the sentence range contained in the Guidelines when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into considera-

tion" by the Commission. He then argues that the Sentencing Commission did not properly take into account the true properties of crack and cocaine when it formulated the ratio. The allegedly identical effect of cocaine and crack is a mitigating circumstance, according to Pickett, because of the differential punishments contained in the 100:1 ratio. The district court was therefore required to depart downward and reduce his sentence, presumably to one within the range that the Guidelines prescribe for convictions involving amounts of cocaine identical to the amount of crack involved in Pickett's offense.

■ Pickett's charge is wrong for three reasons. First, a court is never *required* to depart downward by Section 3553(b). It authorizes departure only when "the court *finds*" that aggravating or mitigating circumstances "*should* result" in a different sentence. 18 U.S.C. § 3553(b) (emphasis added). This has been assumed by the Commission, this court, and all other circuits to grant *discretion* to the district court to depart from the Guidelines in unusual cases. *See* United States Sentencing Commission, *Guidelines Manual*, Ch. 1, Pt. A.4, p.s. ("The sentencing statute *permits* a court to depart") (emphasis added); *United States v. Rodriguez*, 882 F.2d 1059, 1068 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990) ("the court's *discretion* to depart from the Guidelines is broad") (emphasis added). *See also United States v. Patrick*, 935 F.2d 758 (6th Cir.1991) (statute allows for departure); *United States v. Fitzwater*, 896 F.2d 1009, 1010 (6th Cir.1990) ("Act permits, however, a court to depart"); *United States v. Kennedy*, 893 F.2d 825, 827 (6th Cir.1990) ("court's discretion to depart"). Accordingly, the district court would not have been required to depart from the Guidelines even if Pickett's legal premise for departure were correct.

■ Second, a district court's refusal to depart downward from a sentence within the properly computed guideline range is

---

5. 18 U.S.C. § 3162(a)(2) also forces Pickett to waive any Speedy Trial Act argument because he did not raise it before he pled guilty. *See* note 4, *supra.*

not appealable. *United States v. Gregory,* 932 F.2d 1167 (6th Cir.1991); *United States v. Davis,* 919 F.2d 1181, 1187 (6th Cir.1990); *United States v. Smith,* 918 F.2d 664, 667 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1088, 112 L.Ed.2d 1192 (1991); *United States v. Draper,* 888 F.2d 1100, 1105 (6th Cir.1989). Pickett's 240–month sentence is within the properly computed range.

■ Third, the 100:1 ratio is not a sufficiently unusual circumstance to justify a downward departure. *United States v. Reina,* 905 F.2d 638 (2d Cir.1990) (district court reversed for departing downward because "penalties for cocaine base ... are unduly harsh when compared to those for cocaine"). *See, e.g., United States v. Davis,* 900 F.2d 1524, 1539 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990). Therefore, the district court acted properly in not departing downward.

### C

■ Pickett also contends that the 100:1 ratio violates the substantive component of the due process clause. He argues that the effects of crack and cocaine are substantially identical, and that therefore any distinction made between them for sentencing purposes is arbitrary and irrational.

A Congressional statute accords with substantive due process only if it bears a "reasonable relation to a proper legislative purpose, and [is] neither arbitrary nor discriminatory." *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). The 100:1 ratio merely tracks a similar ratio passed by Congress establishing an identical minimum sentence for crimes involving fifty grams of crack and those involving five thousand grams of cocaine. *Compare* 21 U.S.C. § 841(b)(1)(A)(ii)(II) (cocaine) *with* 21 U.S.C. § 841(b)(1)(A)(iii) (crack). Accordingly, we agree with the Eighth Circuit in *United States v. Buckner,* 894 F.2d 975 (1990) that the appropriate inquiry is whether Congress was acting arbitrarily or irrationally in establishing the 100:1 ratio in law.

We believe for two reasons that Congress's act was sufficiently rational to meet the demands of substantive due process. First, presuming as Pickett does that Congress's sole purpose in enacting the ratio was to discourage drug addiction, then the ratio can stand only if it is plausible to believe that the likelihood of becoming addicted to crack is greater than that of becoming addicted to cocaine. We believe that there is sufficient difference of opinion in the scientific community regarding the different likelihoods of becoming addicted to crack or cocaine to justify the Congressional distinction between the two. The government offered evidence at Pickett's sentencing hearing that experts believe that the speed with which crack gets to the brain produces a significantly different effect that increases the likelihood of addiction. There was also evidence produced that crack is usually a purer drug than is cocaine. Such evidence was presented at the Congressional hearings. *See Buckner,* 894 F.2d at 978–79 n. 9 (quotes from the Congressional testimony of Dr. Robert Byck). The mere fact that Nittskoff has a competing theory that addiction levels vary more with dosage and purity than with method of ingestion does not preclude Congress from disagreeing with him.

Congress could also have had another purpose behind the ratio other than the simple suppression of drug addiction. Congress was clearly concerned that the special attributes of crack—its small size and cheap price per dose—could create other societal problems that required remedying. Senators noted that because crack is sold in small doses (called "rocks") it is easier to transport and use, thereby increasing the difficulty of suppressing addiction. The cheap price of each "rock" also permits children to afford cocaine for the first time, thereby exposing another segment of American society to drug addiction. *See Buckner,* 894 F.2d at 978–79 n. 9 (citing statements of Senators Bumpers and Kennedy, 132 Cong.Rec. S14282, 14293). Given these problems caused by the special qualities of crack, it was not irrational for Congress to determine that substantially greater penalties for the sale and distribution of crack were necessary to counterbalance the lure of profit that would otherwise attract persons into the crack trade.

**D**

■ Pickett also contends that the ratio violates the Cruel and Unusual Punishments clause of the eighth amendment. We have twice previously rejected that argument. *United States v. Avant*, 907 F.2d 623 (1990); *United States v. Levy*, 904 F.2d 1026 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). All other circuits that have considered an eighth amendment challenge to the 100:1 ratio have rejected it. *United States v. Buckner*, 894 F.2d 975 (8th Cir.1990); *United States v. Colbert*, 894 F.2d 373 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2601, 110 L.Ed.2d 281 (1990); *United States v. Cyrus*, 890 F.2d 1245 (D.C.Cir. 1989); *United States v. Malone*, 886 F.2d 1162 (9th Cir.1989). While we are without power to overrule the decisions of another panel, *Salmi v. Secretary of Health and Human Services*, 774 F.2d 685, 689 (6th Cir.1985), we must consider whether the Supreme Court's most recent pronouncement on the Cruel and Unusual Punishments clause in *Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) voids our prior decisions. We hold that it does not.

The Court produced two opinions concurring in the result reached in *Harmelin*. Chief Justice Rehnquist and Mr. Justice Scalia argued in one concurring opinion that *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which established a three-part test to determine when a sentence is so disproportionate to the crime that it constitutes cruel and unusual punishment, should be overruled. The other concurring opinion severely limited the application of the *Solem* principle of proportionality. Nothing in either opinion casts doubt upon our prior rulings.

**V**

For the foregoing reasons, we AFFIRM the district court in all respects.